IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| POWER AUTHORITY OF THE STATE OF NEW YORK, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-703C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF

Pursuant to our motion for leave, submitted contemporaneously with this brief, defendant, the United States, provides this supplement to its prior motion for partial summary judgment relating to the schedule for the acceptance of spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW").[1]

DISCUSSION

As the Court is aware, since the Government filed its motion for partial summary judgment regarding the rate of SNF acceptance, this Court has issued two published decisions and two unpublished decision resolving our motions in the cases in which they were issued. However, with all due respect, the Court's decisions in those cases do not consider the practicalities of the acceptance of SNF necessitated by the Standard Contract.

The Court's decision in Commonwealth Edison Co. v. United States, 57 Fed. Cl. 88 (2003), the rationale of which the Court adopted by unpublished orders in Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), and Southern Nuclear Operating Co. v.

---

1/ As the Court is aware, we also filed a motion for partial summary judgment relating to Greater Than Class C ("GTCC") radioactive waste issues and a motion to dismiss plaintiff's taking claim. Proceedings upon those motions remain stayed pursuant to the Court's previous orders.

United States, No. 98-614C (Fed. Cl. Apr. 7, 2004), rejected the Government's arguments that the schedule provisions contained in the Standard Contract provide the mechanism for determining the SNF acceptance schedule. Yet, the Court did not explain – from a practical standpoint – the manner in which SNF acceptance would, or will, work absent reference to that schedule mechanism. Finding that the delivery commitment schedule ("DCS") process did not limit the contract holder's damages or limit its right to the acceptance of larger amounts of SNF than identified in those DCSs, the Court found that the DCS process was only "non-binding and preliminary." Id. at 663. Yet, the Court did not explain the manner in which SNF acceptance could practically operate under the Standard Contract without reference to the DCS process: specifically, without the DCS process, the Standard Contract contains no requirement that the contract holder notify the Department of Energy ("DOE") of the amount of SNF it wants DOE to take in any particular year (either in advance or on the day that acceptance is desired); no notice of the location, date, or time for that acceptance within a particular year; and no notice of the characteristics of the SNF that will need to be accepted at that time or the size of the cask that DOE will have to procure to transport the SNF.

Without requirements for advance notice, such as that required by the DCS provisions, and given the long lead times that many aspects of DOE's performance take (such as the procurement of the transportation casks), DOE could never perform the Standard Contract if interpreted as it has been in the ComEd case. Further, the ComEd Court fails to explain how, given its belief that the DCS provisions of the Standard Contract are meaningless, DOE would be able to perform its obligations to accept SNF. Certainly, as discussed in our motion for partial summary judgment, contract provisions cannot be interpreted in a manner that renders them

meaningless. See Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (contract interpretation should not render portion of contract meaningless). Yet, the ComEd decision renders the DCS provisions meaningless and, further, would make the Standard Contract virtually impossible to perform. As we establish in our motion, the Court should find that the DCS provisions in the Standard Contract have meaning and, given that they provide the sole means of establishing workable and practical SNF acceptance schedules, provide the basis for establishing the acceptance schedule for use in establishing damages in this case.

In Indiana Michigan Power Co. v. United States, 57 Fed. Cl. 88 (2003), the Court stated that its "obligation is to provide a rate of [SNF] acceptance that the Department of Energy would have employed in absence of the breach." Id. at 100 (emphasis added). With all due respect, that focuses upon the wrong question. The issue presented requires a determination of the rate of SNF acceptance that DOE was contractually obligated to satisfy. DOE cannot be held financially responsible in damages for a failure to take actions that it might have elected voluntarily to perform, even though it was not required to do so. The only damages that the Court can award are those based upon DOE's breach of its obligation to perform actions that it was contractually obligated to perform. Accordingly, the Court's finding in Indiana Michigan that "[n]othing in the record supports the collection rate that defendant would use – 900 metric tons per year," id. at 98, is irrelevant to the identification of the rate at which DOE was contractually obligated to accept SNF.

The Indiana Michigan Court also found, like the Court in ComEd, that the schedule terms of the Standard Contract did not define the contractual acceptance schedule and, in fact, found that both "Congress and the parties anticipated that the Department of Energy would collect fuels

at a rate sufficient to eliminate the need for additional storage capacity on site and to reduce the backlog of already-stored materials." Id. at 99. Yet, the Court in Indiana Michigan cites no support for this assertion. As we establish in our motion, there is no language in the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270, or its legislative history that identifies any such congressional "anticipation," and we are aware of no documentation that supports a belief by DOE that it was contractually binding itself to such an obligation. In fact, as discussed in our motion, DOE declined during the administrative proceedings that resulted in the promulgation of the Standard Contract to place any such requirement in the Standard Contract. Further, the Indiana Michigan Court's finding that a "3,000-ton annual rate of delivery" is a reasonable term simply to insert into the Standard Contract has no basis and, in any event, cannot be done in a summary judgment proceeding. Not only does it ignore the DCS process and the agreements that DOE and numerous utilities had already made, it creates a contract to which the parties had never agreed.

In fact, the trial court's decisions in all three cases eliminate the existing schedule terms from the Standard Contract, leaving the Standard Contract with no mechanism for determining when, how, or where DOE will accept SNF and/or HLW or for allowing DOE, assuming that SNF acceptance had timely begun, to identify the SNF that it would need to accept, the dates on which it would need to accept it, and the locations at which it would need to accept. In essence, the Court's decisions have rendered the schedule terms of the Standard Contract so indefinite that the Standard Contract is inoperable.

The Court of Claims has previously observed that, "[n]ormally, the task of supplying a missing, but essential, term (for an agreement otherwise sufficiently specific to be enforceable) is

the function of the court." David Nassif Assocs. v. United States, 214 Ct. Cl. 407, 423, 557 F.2d 249, 258 (1977). However, the limitation upon the Court's ability to supply its own term is clearly stated: "for an agreement otherwise sufficiently specific to be enforceable." Id. Here, the trial court in the ComEd, Indiana, Yankee and Southern Nuclear cases has eliminated the contract's own schedule mechanism and substituted, or will have a trial through which it intends to substitute, a schedule term that the Court thinks would be reasonable. Yet, the acceptance schedule that the Court in Indiana Michigan selected for the contract is not based upon any information or language in the contract itself. To the contrary, the Court dismissed any reliance upon the agreements regarding schedule that the parties had already made, as identified in approved DCSs. Instead, the Court simply inserted its own term into the Standard Contract.

A court cannot make contracts for the parties. To be valid and enforceable, "a contract must have both consideration to ensure mutuality of obligation . . . and sufficient definiteness so as to 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" Ridge Runner Forestry v. Veneman, 28 F.3d 1058, 1061 (Fed. Cir. 2002) (citations omitted). If an agreement is missing one or more essential terms, an agreement to agree on those terms is unenforceable because it lacks mutuality of intent and sufficient definiteness to determine the rights and liabilities of the parties. See Modern Sys. Tech. Corp. v. United States, 979 F.2d 200, 204 (Fed. Cir. 1992); Bel Pre Health Care Center, Inc. v. United States, 24 Cl. Ct. 495, 496 (1991) ("[i]f an essential term, such as the quantity term, has been omitted then there can be no basis for deciding whether the agreement has been broken; the definiteness necessary for enforceability is lacking"), aff'd, 980 F.2d 745 (Fed. Cir. 1992) (table); Transamerica Equip. Leasing Corp. v. Union Bank, 426 F.2d 273, 274 (9th Cir. 1970) ("[w]here an agreement is not

sufficiently definite to enable a court to give it an exact meaning or where an essential element is reserved for future agreement of both parties, a legal obligation cannot result"). "Courts refuse to enforce agreements that contain indefinite promises or terms they deem essential because judicial clarification of the uncertainty entails great danger of creating intentions and expectations that the parties themselves never entertained." Neeley v. Bankers Trust Co. of Tex., 757 F.2d 621, 628-29 (5th Cir. 1985); see Mays v. Trump Indiana, Inc., 255 F.3d 351, 357-58 (7th Cir. 2001) ("mere agreement to agree does not a binding contract make" without agreement on "all essential terms that are to be incorporated in the document"); Shann v. Dunk, 84 F.3d 73, 78-81 (2d Cir. 1996) ("[w]e believe the issue of Shann's liability for the deferred payments was of such importance that, if the district court finds the parties failed to agree on it, the court would be required to void the contract for absence of an essential term").

Obviously, as indicated in the Court of Claims' decision in Nassif, certain terms of a contract that are "essential" to it in some respects may, in certain circumstances, be identified by the Court, which must consider what "the parties would have agreed upon at the time of their initial . . . negotiations . . . ." David Nassif, 214 Ct. Cl. at 376, 644 F.2d at 7. However, at a certain point, the missing term becomes so essential to the formation of the contract that the Court, if it supplies the missing term itself, creates a contract to which the parties had never agreed. In Nassif, even though the cafeteria that the plaintiff was to build may have been an "essential" part of the contract, it was not the central part of the contract, which, instead, was a 20-year lease of floor space in an office building. Here, the "missing" term that the plaintiff seeks to have the Court impose into the Standard Contract is one of the central aspects of the Standard Contract and will have an extraordinary effect upon the damages that the plaintiff could

recover from the Government here. Depending upon the rate and schedule of SNF acceptance that the Court imposes into the Standard Contract, the damages in all of the pending SNF cases could vary from a very small amount of damages to, as alleged by plaintiffs, billions of dollars. This enormous variance in the effect of the acceptance schedule term upon the parties' rights, obligations, and damages cannot be said to be minor and, in fact, is one of the most essential terms of the Standard Contract. To the extent that the Court disagrees with the Government's arguments that the schedule provisions of the Standard Contract and the approved DCSs identify the parties' obligations in this case, the Court cannot merely impose its own view of what a reasonable schedule term should be. A rejection of the Government's schedule arguments would effectively render the Standard Contract too indefinite to enforce. See Massengill v. Guardian Mgt. Co., 19 F.3d 196, 202 (5th Cir. 1994) ("When a writing does not show the parties' agreement on a minor contract term, the reviewing court may supply a reasonable interpretation. . . . *But essential contract terms may not be supplied by a court*. 'If any essential term is left unresolved, there is simply no contract and no obligation on the parties.'" (emphasis added; citation omitted; applying Mississippi law)); see also Coyle's Pest Control, Inc. v. Cuomo, 154 F.3d 1302, 1306 (Fed. Cir. 1998) (refusing to read "reasonable" term into contract, court found contract unenforceable as indefinite quantity contract because it lacked minimum quantity term).[2]

---

2/ It is true that the appellate court has found that a contract term which allows for future negotiation "impliedly places an obligation on the parties to negotiate in good faith," Aviation Contractor Employees, Inc. v. United States, 945 F.2d 1568, 1572 (Fed. Cir. 1991), and that, where the contract and applicable regulations provide guidelines for negotiations of future agreements, the Court may "determine whether or not the government negotiated according to the contract." City of Tacoma, Dep't of Public Utilities v. United States, 31 F.3d 1130, 1132 (Fed. Cir. 1994). However, that review does not empower the Court to supply essential missing terms

As we have established in our motion for partial summary judgment regarding the rate of SNF acceptance, the Standard Contract provides a mechanism for establishing the SNF acceptance schedule, including the rate of SNF acceptance. The parties followed that mechanism for a significant period of time. Further, the Department of Energy published its Acceptance Priority Ranking and Annual Capacity Report, which identified the acceptance schedule for the first ten years of contract performance. As a result, a schedule exists that the Court should view as the contractual "schedule" for purposes of assessing damages. Absent the Court's reliance upon that prior schedule, we cannot identify any basis for the Court to impose its own schedule into this contract.

For the foregoing reasons, we respectfully request that the Court grant the Government's motion for partial summary judgment regarding the rate of SNF acceptance.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

---

if the parties fail to reach an agreement following good faith negotiations. In any event, it does not provide the Court with the ability to create a contract for the parties where the "missing" terms are so essential to the central purpose of the contract that the absence of the terms renders the contract too indefinite to enforce.

s/ R. Alan Miller
R. ALAN MILLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6288
FAX: (202) 307-2503

OF COUNSEL:

KEVIN B. CRAWFORD
HEIDE L. HERRMANN
RUSSELL A. SHULTIS
VICTORIA STROHMEYER
MARIAN E. SULLIVAN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

May 10, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May 2004, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ R. Alan Miller