IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| POWER AUTHORITY OF THE STATE OF NEW YORK, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 00-703C |
| | ) | (Chief Judge Damich) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FILINGS CONCERNING THE RATE OF ACCEPTANCE OF SPENT NUCLEAR FUEL

Pursuant to this Court's order dated April 29, 2004, defendant, the United States, respectfully submits this reply to "Plaintiff's Opposition To Defendant's Motion To Strike Portions Of Plaintiff's Filings Concerning The Rate Of Acceptance Of Spent Nuclear Fuel," dated May 20, 2004.

DISCUSSION

In its response to the Government's motion to strike, plaintiff, Power Authority of the State of New York ("NYPA"), raises two arguments to establish that its introduction of the settlement agreement between the Department of Energy ("DOE") and PECO Energy Company ("PECO") in its summary judgment papers does not violate Federal Rule of Evidence 408. First, NYPA contends that it "is not offering the PECO-Government agreement to prove either liability or damages, but rather to show the Government's intent . . . to use the 3000 MTU rate in operating a [spent nuclear fuel ("SNF")] storage facility . . . ." Pl. Opp. 2. Second, NYPA contends that it is "using the PECO-Government agreement to rebut the Government's argument

that the rates used in the Delivery Commitment Schedules ('DCSs') were binding and otherwise appropriate." Pl. Opp. 4. As discussed below, both of these contentions are without merit.

NYPA's attempt to introduce the substance of DOE's settlement agreement with PECO as evidence of DOE's "intended acceptance rate of SNF" clearly violates Federal Rule of Evidence 408.[1] This rule prohibits introduction of settlement negotiations "to prove liability or damages." Abundis v. United States, 15 Cl. Ct. 619, 621 (1988); see Fed. R. Evid. 408 (evidence of furnishing or accepting a settlement offer "is not admissible to prove liability for or invalidity of the claim *or its amount*") (emphasis added). Although Federal Rule of Evidence 408 provides an exception to the inadmissibility of settlement discussions "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation," Fed. R. Evid. 408, that exception is inapplicable here.

Despite its contentions to the contrary, NYPA is offering the DOE-PECO settlement agreement as substantive evidence to prove its damages claim against the Government. The only reason that DOE's rate of SNF acceptance under the Standard Contract is an issue in this case is because that rate and the resulting schedule of SNF acceptance are determinative of NYPA's damages in this litigation. Accordingly, DOE's "intended" rate of acceptance of SNF is so

---

[1] In its proposed findings of uncontroverted fact regarding the rate of SNF acceptance, NYPA contends that DOE's settlement agreement with PECO provides "evidence of the intended acceptance rate of SNF by stating that DOE 'intends to operate the repository at a steady rate of 3000 MTUs . . . .'" NYPA Proposed Finding No. 182. Further, in its opposition brief regarding the rate of SNF acceptance, NYPA refers to DOE's settlement agreement with PECO as "identif[ying] a 3000 annual steady state acceptance rate after a four year ramp up period." NYPA Opposition Brief, at 38. NYPA's appendix in support of its proposed findings also contains selective portions of DOE's settlement agreement with PECO. See NYPA Appendix, at 690-94.

closely intertwined with the amount of damages attributable to the Government that they are virtually inseparable for the purpose of determining admissibility under Rule 408. As discussed in our motion for partial summary judgment regarding the rate of SNF acceptance, damages attributable to the Government, if any, must be identified upon the acceptance schedule contained in approved delivery commitment schedules. NYPA cannot prove its damages claim against the Government by introducing evidence of the SNF acceptance rates discussed in the DOE-PECO settlement agreement merely by characterizing it as evidence of "intent." Such an attempt to prove damages by introduction of settlement material is clearly in violation of Federal Rule of Evidence 408.

This Court rejected a similar argument in Abundis v. United States, 15 Cl. Ct. 619 (1988), where plaintiffs attempted to introduce evidence of a settlement agreement between the Government and a plaintiff in a former case under the "another purpose" exception to Rule 408. The plaintiffs in that case argued that the settlement agreement demonstrated that "back pay is fair and appropriate." Id. at 621. This Court rejected the plaintiffs' contention, holding that the proffered evidence "obviously relates to liability" and that, therefore, "[n]o exception to Rule 408 applies." Id. Similarly, in National Presto Industries, Inc. v. West Bend Co., 76 F.3d 1185 (Fed. Cir. 1996), the United States Court of Appeals for the Federal Circuit rejected the argument that a settlement offer was admissible to show "a culpable state of mind" under the "another purpose" exception to Rule 408. Id. at 1197. Likewise, in First Interstate Bank of Billings v. United States, 61 F.3d 876 (Fed. Cir. 1995), the Federal Circuit affirmed the trial court's exclusion of discussions in a meeting because it was "in the nature of a settlement conference." Id. at 882.

The Court rejected defendant's argument that the evidence was admissible for impeachment purposes under Rule 408. Id.

In its response, NYPA relies upon non-binding decisions of other Federal appellate courts in support of its contention that the DOE-PECO settlement agreement should be admissible under the "another purpose" exception to Rule 408. However, those decisions are distinguishable because they involve situations in which the proffered evidence was introduced to prove something other than liability or damages. In United States v. Hauert, 40 F.3d 197 (7th Cir. 1994), which NYPA cites at page 3 of its opposition to our motion to strike, defendant was prosecuted for tax evasion. At trial, the Government introduced evidence of settlement documents written by defendant in which he acknowledged that his wages and salary were taxable. Defendant objected to introduction of this evidence under Rule 408. The trial court rejected his contention and found that the evidence was proffered not to prove liability or damages, but to establish defendant's subjective intent and understanding of his income tax obligations. The Court of Appeals for the Seventh Circuit affirmed, holding that "[t]he evidence in question was admitted to show whether Hauert knew 'what the law is' and his 'legal duty' thereunder" and "that the district court was acting within its sound discretion in admitting the evidence at issue." Id. at 200. In contrast to Hauert, where evidence of settlement material was introduced to prove defendant's *mens rea*, NYPA is introducing evidence of the settlement agreement to prove damages.

In Coakley & Williams Construction v. Structural Concrete Equipment, 973 F.2d 349 (4th Cir. 1992), which NYPA cites at page 2 of its opposition, the plaintiff made a written settlement offer, and the parties subsequently entered into a settlement agreement, releasing all

claims against defendant. Subsequently, plaintiff sued defendant, ignoring the release provision of the settlement agreement. The lower court admitted the settlement offer as extrinsic evidence of the parties' intent regarding the allegedly ambiguous release. The United States Court of Appeals for the Fourth Circuit acknowledged that settlement offers are "inadmissible when offered to prove liability or damages." Id. at 353. However, because the settlement offer was offered to establish the parties' intent regarding a release provision in the subsequent settlement agreement, the court held that it was admissible under Rule 408. Id. at 354. In contrast, NYPA is introducing the DOE-PECO settlement agreement to prove damages, not to establish the parties' intent regarding an ambiguous term in the settlement agreement itself.

In Bituminous Construction, Inc. v. Rucker Enterprises, Inc., 816 F.2d 965, 969 (4th Cir. 1987), which NYPA cites at page 3 of its opposition, the parties entered into a joint check agreement in which the defendant, the owner of a parking lot, agreed to ensure that the plaintiff-subcontractor would be paid for its resurfacing work in the event that the contractor refused to pay. The contractor refused to pay the plaintiff, and the plaintiff requested payment from the defendant, who, in turn, refused to pay. The plaintiff introduced evidence of settlement negotiations involving the parties. The Fourth Circuit held that the evidence was admissible because it was not offered to prove liability, but introduced "for the purpose of showing Rucker's understanding of its obligations under the joint check agreement, and to establish that Bituminous had made demand upon Rucker for payment." Id. at 969. Here, NYPA is not relying upon factual statements by DOE made during negotiations that relate to DOE's underlying knowledge or interpretation of contract terms. Instead, it is relying solely upon the existence of the settlement agreement, and its contents, as substantive evidence. The DOE-PECO settlement

agreement does not show DOE's "understanding of its obligations" under the Standard Contract, but instead shows the terms under which DOE was willing to settle in 2000. That "evidence" is inadmissible to establish DOE's obligations under the Standard Contract itself.

In Bankcard America, Inc. v. Universal Bankcard Systems, Inc., 203 F.3d 477, 484 (7th Cir. 2000), which NYPA cites at page 2 of its opposition, the United States Court of Appeals for the Seventh Circuit held that evidence of settlement negotiations was admissible when offered for the purpose of establishing a party's state of mind and to explain that the party had converted accounts in violation of its contract because it had thought that a settlement had been reached. The court explained that "[s]ettlements will not be encouraged if one party during settlement talks seduces the other party into violating the contract and then, when a settlement ultimately is not reached, accuses the other party at trial of violating the contract." Id. Clearly, NYPA's introduction of the DOE-PECO settlement agreement is not for such a purpose.

To the contrary, NYPA's introduction of DOE's rate of SNF acceptance in the DOE-PECO settlement agreement is obviously for the purpose of proving damages, which is impermissible under Federal Rule of Evidence 408. See Abundis, 15 Cl. Ct. at 621. NYPA's only purported use of the DOE-PECO settlement agreement is based upon DOE's agreement in the settlement agreement to pay damages based upon a 3,000 MTU annual acceptance rate. DOE's willingness to enter into a settlement agreement with another contract holder under specific terms applicable to that settlement is not admissible as evidence of DOE's obligations under the Standard Contract itself. NYPA's and other spent nuclear fuel plaintiffs' efforts to use DOE's negotiating and settlement positions as substantive evidence of the parties' contractual

intent under the Standard Contract itself directly conflicts with Federal Rule of Evidence 408 and the purposes underlying that rule.

NYPA's contention that it is introducing the "PECO-Government agreement to rebut the Government's argument that the rates used in the Delivery Commitment Schedules were binding and otherwise appropriate," Pl. Opp. 4, is equally without merit. Although some courts have held that evidence of settlement negotiations is admissible under Rule 408 in some circumstances when offered for purposes of rebuttal, NYPA is introducing the DOE-PECO settlement agreement to prove damages. NYPA cannot introduce evidence of settlement negotiations to prove damages by merely characterizing it as "rebuttal" evidence. For this reason, NYPA's reliance upon Freidus v. First National Bank, 928 F.2d 793 (8th Cir. 1991), for the proposition that evidence of settlement negotiations is admissible under Rule 408 when offered for the purposes of rebuttal is to no avail. Clearly, NYPA is introducing the DOE-PECO settlement agreement to prove damages by arguing that the rate of acceptance of SNF discussed in the settlement agreement, rather than that contained in approved delivery commitment schedules, governs the extent of DOE's liability (*i.e.*, damages).

Finally, NYPA's contention that evidence of the DOE-PECO settlement agreement is admissible "to show the Government's routine practice [] concerning the 3000 MTU rate," Pl. Opp. 4, is entirely devoid of merit. It is inconceivable that the Government could have a "routine practice" of accepting 3000 MTUs of SNF each year when the Government has not accepted any SNF from the utility plaintiffs pursuant to the Standard Contract. Moreover, evidence of the routine practice of an organization is admissible under Federal Rule of Evidence 406 as an exception to the inadmissibility of *character evidence*. See Fed. R. Evid. 404 ("[e]vidence of a

person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."); Fed. R. Evid. 406 ("[e]vidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice"). That an organization has a routine practice is entirely irrelevant to whether evidence of settlement negotiations by the organization is admissible under Rule 408's "another purpose" exception. NYPA has confused the evidentiary inquiries under Rules 404 and 406 (character and habit evidence) with Rule 408 (settlement negotiations). The Court should reject NYPA's misleading contentions.

For the foregoing reasons, we respectfully request that the Court strike (1) paragraphs 181 and 182 of NYPA's proposed findings of uncontroverted fact regarding the rate of SNF acceptance, (2) pages 690 through 694 of NYPA's appendix filed in support of NYPA's proposed findings, and (3) the sixth bulleted paragraph of page 38 of NYPA's opposition to defendant's motion for partial summary judgment regarding the rate of SNF acceptance.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ R. Alan Miller
R. ALAN MILLER
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: 202-616-0383
Fax: 202-307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

June 3, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 3rd day of June 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S FILINGS CONCERNING THE RATE OF ACCEPTANCE OF SPENT NUCLEAR FUEL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.