**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on September 8, 2008)

| | |
|---|---|
| **POWER AUTHORITY OF THE STATE OF NEW YORK,** Plaintiff, v. **THE UNITED STATES**, Defendant. | No. 00-703C (Chief Judge Damich) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COORDINATE DISCOVERY AND DEVELOP A LITIGATION PLAN FOR THE SPENT NUCLEAR FUEL CASES**

Plaintiff Power Authority of the State of New York respectfully submits its brief in opposition to Defendant's (the "Government") August 21, 2008 motion seeking coordinated discovery and the issuance of a litigation plan from this Court in the spent nuclear fuel ("SNF") cases. As detailed below, the Government's motion lacks merit because it relies primarily on the mere fact that the parties in the SNF cases had previously engaged in coordinated discovery, without specifically explaining why *further* coordinated discovery would be helpful, appropriate, or necessary. As the Court is aware, the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") recently issued several decisions that resolve various legal and factual matters at issue in virtually all the SNF cases – matters that had been the subject of coordinated discovery from 2001 to 2002. Thus, in the vast majority of pending SNF cases in this Court, any damages trials would likely address only the recoverability of mitigation costs that are unique to the plaintiff utility. In other words, assuming that the Federal Circuit's recent decisions become final, there would be no remaining "common question[s] of law and fact" in the SNF cases that

are appropriate for coordinated discovery. Significantly, the Government's motion does not even suggest what those common questions of law and fact in this or any other SNF case might be.

To be clear, the utilities represented by the undersigned counsel support any reasonable effort to streamline the litigation of these cases consistent with RCFC 1 ("secur[ing] the just, speedy, and inexpensive determination of every action"). However, the Government's motion, if granted, would not further these goals and would risk imposing additional and unnecessary costs and delays on plaintiff utilities – the non-breaching parties. The Government's motion should therefore be denied.

## I. NO COMMON ISSUES OF FACT OR LAW REMAIN IN THE SNF CASES THAT WOULD WARRANT ANY FURTHER COORDINATED DISCOVERY

In its motion, the Government cites RCFC 42 for the proposition that the existence of "a common question of law or fact" would permit this Court to consolidate or coordinate discovery proceedings in the SNF cases, and appears to rely on this Court's implementation of a litigation plan in the Winstar cases. Gov't Motion at 17-20. However, the Government's motion does not specify any common issue of fact or law in the SNF cases that would warrant further coordinated discovery.[1] Instead, the Government relies on a lengthy and irrelevant recitation of the allegedly "duplicative" deposition testimony and document production requests that it previously faced in coordinated discovery. Id. at 13-14. As the Government concedes, however, such discovery

[1] Given the Government's threshold failure to cite any particular common question of law or fact that remains at issue in the SNF cases, any benefits that the Government has alleged about conducting coordinated discovery are illusory. Moreover, although the Government contends that one of the purposes of having common management of the Winstar cases was minimization of the "onerous litigation and discovery burdens facing the government," as explained below, the Government has initiated the vast majority of fact discovery in the SNF cases since the completion of coordinated discovery on the acceptance rate and other issues several years ago. Indeed, the Government has failed to specify any impending, concrete "discovery burdens" that it would face in the SNF cases going forward.

largely pertained to acceptance rate and Standard Contract promulgation issues that the Federal Circuit resolved with its recent decisions in the SNF cases, and that were in any event the subjects of just the type of coordinated discovery process the Government now wants to invoke anew. While the undersigned counsel participated in coordinated discovery and has, consistent with the Rules of this Court, utilized testimony and documents elicited from that process, any suggestion that the undersigned counsel has abused the discovery process is patently false. For example, the last depositions of Government personnel taken by the undersigned counsel were held on October 11-12, 2006 and on November 15, 2006 – nearly two years ago. Four depositions were taken (of Messrs. Kouts, Morgan, Pollog and Zabransky) on these dates, each of which was limited to two hours in duration. The depositions were also taken on a coordinated basis in connection with three separate cases, all of which were set to be tried between late 2006 and early 2007. No written discovery has been served on the Government by the undersigned counsel for at least two years. In short, the litany of discovery problems and burdens cited by the Government can hardly be attributed to the undersigned counsel or the clients he represents. Furthermore, although the Government complains about the extent to which Messrs. Kouts, Morgan, Pollog, and Zabransky have been deposed, it would be speculative at best to predict at this time whether further depositions or testimony from these witnesses will have any relevance to the parties' litigation of the SNF cases in light of the Federal Circuit's recent decisions.

At best, the Government vaguely contends in support of coordinated discovery that the Federal Circuit's recent decisions "directly implicate issues that are common to many, if not all, of the SNF cases." Gov't Motion at 20. If the Government is arguing that the Federal Circuit's rulings on the rate of SNF acceptance (i.e., the "acceptance rate") issue will affect this Court's adjudication of damages in most of the pending SNF cases, Plaintiff would agree with the



400938872v1

Government's point as a general matter. In many SNF cases where this Court has issued a trial decision, its damages awards have been based upon particular findings regarding the acceptance rate. But the Government inexplicably argues that, going forward, coordinated discovery would "ensure that common issues are resolved in an efficient manner." Here, the Government appears to contemplate that further coordinated discovery would take place in order to "resolve" the acceptance rate issue in any pending SNF case. Plaintiff respectfully submits, however, that even if the acceptance rate as determined by the Federal Circuit is to be *applied* in computing damages in many SNF cases, the Federal Circuit's decisions have resolved the *magnitude* of the acceptance rate as a matter of law. At this point, no further litigation of the acceptance rate (as a disputed matter) by the parties is necessary or appropriate.

For example, the Federal Circuit has ruled that this Court must calculate damages for the Government's breach based on the holding that "the Standard Contract required DOE to accept SNF/HLW in accordance with the 1987 ACR process." Pac. Gas and Elec. Co. v. United States, 2008 WL 3089272, at *10 (Fed. Cir. Aug. 7, 2008). Given the Federal Circuit's explicit mandate, any further discovery on the acceptance rate would appear to be pointless. The Government has not explained why any plaintiff utility would need to seek further discovery on the acceptance rate, and certainly has not identified any plaintiff that has suggested that it will undertake such additional discovery. At a minimum, the Government has failed to establish any merit of having further coordinated discovery on the acceptance rate.

Just as importantly, the Government long ago admitted that a resolution of the acceptance rate issue that is binding on the SNF cases would permit this Court to determine the amount of damages resulting from the Government's breach in each case. See Motion To The Chief Judge To Reassign To A Single Judge Cases Involving Alleged Breaches Of The Standard Contract

Published At 10 C.F.R. Part 961 at 15 (Jan. 8, 2001). Although the Government initially proposed in its rejected effort to consolidate the SNF cases that one judge presiding before a consolidated proceeding in this Court would issue an acceptance rate decision that was "binding" on all cases, it stands to reason that a binding appellate ruling from the Federal Circuit would similarly obviate the need for any further discovery on the acceptance rate.

Because the Federal Circuit has conclusively resolved the acceptance rate issue, it appears likely that this Court's adjudication of damages in the remaining SNF cases will be significantly streamlined and focused primarily (if not completely) on issues that are unique to each plaintiff utility. Such issues include the recoverability of costs based on, *inter alia*, the utility's decision to re-rack its spent fuel pool or its decision to build a dry fuel storage facility to mitigate the effects of the Government's breach – decisions that are based on the unique circumstances of the particular plant(s) involved in each case. Virtually all of the SNF damages cases that the undersigned counsel for Plaintiff has litigated through trial (and in which decisions have been issued) have followed this general approach,[2] and in those cases the Government conducted the vast majority of fact discovery. It seems likely that the adjudication of Plaintiff's

---

[2] As of the date of this filing, the undersigned counsel has litigated four damages claims through trial: Indiana Michigan Power Co. v. United States, No. 98-486C (Hodges, S.J.); Sys. Fuels, Inc. v. United States, No. 03-2624C (Braden, J.); Northern States Power Co. v. United States, No. 98-483 (Wiese, S.J.); Sys. Fuels, Inc. v. United States, No. 03-2623C (Lettow, J.). The undersigned counsel also participated at trial in a fifth case, Boston Edison Co. v. United States, No. 99-447C (Lettow, J.), which case was consolidated with Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Lettow, J.) ("ENGC") for limited purposes. ENGC's own damages claim, however, has yet to be tried.

Additionally, the undersigned counsel represents the plaintiff in two other cases where dates for damages trials have been set: Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C (Wheeler, J.) (June 2009); Detroit Edison Co. v. United States, No. 02-926C (Williams, J.) (December 2009). In both of these cases, the plaintiff's damages claims also seek recovery of mitigation costs from re-racked spent fuel pools and the construction and operation of dry fuel storage facilities. In these two cases, the Government has conducted the vast majority of fact discovery as well.

damages claim here would be based on a similar, straightforward approach. Moreover, because the Federal Circuit has resolved the acceptance rate issue, it also seems likely that the Government will again conduct the vast majority of discovery in this case, which discovery should address matters unique to each utility's plant(s).

Thus, until the Government can actually identify even one remaining issue of fact or law that is common to all the SNF cases, any consideration of coordinated discovery would be putting the cart squarely before the horse.

## II. THE GOVERNMENT'S PROPOSED LITIGATION PLAN, INCLUDING THE THREE-JUDGE PANEL, LACKS MERIT AND IS PREJUDICIAL TO UTILITIES

In proposing a litigation plan that requires each remaining SNF plaintiff to provide a detailed claim within 60 days after the final resolution of the Federal Circuit appeals in the SNF cases, the Government essentially seeks to implement a unilateral audit process that undermines this Court's established procedures for resolving damages claims and imposes burdens and deadlines only on the plaintiffs while imposing no reciprocal obligations on itself. In addition, the Government's one-sided plan would ignore the unique logistical situations and factual scenarios underlying each plaintiff utility's case.

As a threshold matter, the Government's litigation plan places significant undue burden on plaintiff utilities that are the non-breaching parties and should be afforded the discretion to pursue their claims when appropriate. Many SNF cases have been stayed not only because of cases pending before the Federal Circuit, but also because of the decision in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), where the Federal Circuit ruled that in a partial breach case, a plaintiff may recover only its past damages (while seeking any future damages in subsequent actions). In light of this guidance, many plaintiff utilities have chosen to

stay their actions until a significant amount of damages will have been incurred to warrant expenditure of the parties' (and this Court's) resources. For this reason alone, the imposition of an arbitrary 60-day requirement would be unreasonable and untenable for many plaintiff utilities. Although the Government contends that a plaintiff's claim "submission" would permit the Government to propose a scheduling plan "based upon the apparent complexity of the various SNF plaintiffs' submissions," the Government does not provide any timetable for such a unilateral evaluation process. But even if the Government's motion had imposed a deadline for its own scheduling plan, ultimately, the breaching party should not be permitted to dictate the timing of when the plaintiff utility may litigate its claims. The Government's proposed claim process (if implemented) would also likely derail progress in the significant number of SNF cases in which fact discovery has already begun, or in which deadlines for the submission of expert reports have already been set, or in which trials have been scheduled.

Just as importantly, RCFC 26 already sets forth a reasonable and efficient procedure for streamlining the scope of fact and expert discovery. In particular, the parties are required under RCFC 26(a)(1) to exchange initial disclosures that provide the Government with ample notice as to the individuals who will most likely have discoverable information (i.e., support for the plaintiff utility's damages claim). Based on past experience in the SNF cases, typically within a period of months after submission of initial disclosures, plaintiff utilities have also served the Government with expert reports detailing their damages claims. These reports (combined with the initial disclosures) have provided more than enough guidance for the Government to proceed with fact and expert discovery in a non-haphazard manner. The Government has provided no reason to deviate from this well-settled practice.



400938872v1

Third, the Government's motion alludes in vague generalities to "unnecessary expenses" and "delays" that would allegedly be avoided with a litigation plan, but cannot cite specifically to any such problems that have occurred previously in the SNF litigation without a litigation plan. Assuming *arguendo* that the Government were able to specify problems that allegedly occurred due to the lack of a litigation plan in the SNF cases, it has failed to establish any nexus between the root causes of such claimed past problems and the fact discovery that would likely take place in these cases going forward – especially now that the Federal Circuit has resolved the acceptance rate issue. Similarly, although the Government contends that the institution of a three-judge panel to coordinate case management in the SNF cases would eliminate the likelihood of "incongruous and conflicting rulings" on discovery issues, the Government has failed to specify in its motion that any such inconsistencies have actually occurred in this Court's past SNF discovery rulings (or explained why inconsistent decisions would occur going forward).

Finally, even if the Government's suggestion that a three-judge panel be convened to supervise all of the SNF cases held any substantive merit, such a proposal appears to lack statutory authority. Congress has unequivocally stated that "[t]he judicial power of the United States Court of Federal Claims with respect to any action, suit, or proceeding, except congressional reference cases, *shall be exercised by a single judge*, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges." 28 U.S.C. § 174(a) (emphasis added). This statute provides that "a single judge" acting alone exercises judicial power – not a panel of judges. The statute's reference to any "proceeding," would certainly encompass the Government's proposed proceedings for coordinated discovery and to implement a litigation plan. The statute's exception for

congressional reference cases – where three judge panels are authorized – proves the rule that each member of this Court exercises the "judicial power" as a single judge. See generally 28 U.S.C. § 2509(a) (allowing Chief Judge of CFC to appoint three-judge panel for congressional reference cases). Congress has been very careful about identifying when it wants this or any federal trial court to proceed using a single or multiple judges. Compare 28 U.S.C. § 254 (noting that generally the Court of International Trade acts through a single judge) with id. § 255(a) (providing that in limited circumstances the Court of International Trade may act through three judges).

The inspiration for the three-judge panel concept appears to come from the federal courts' panel on multidistrict litigation. See Gov't Motion, Appendix A38, A41. However, Congress explicitly created the panel on multidistrict litigation that "shall consist of seven circuit and district judges" appointed by the Chief Justice of the United States. 28 U.S.C. § 1407(d). Ultimately, to the extent this Court wants to adopt an approach advocated by the CFC Bar Association's Ad Hoc Committee on Related Cases of the Advisory Council in revising its rules, it appears the Court will need statutory approval to do so. Absent congressional approval, the use of a three-judge panel to implement the Government's coordinated discovery and litigation plan would contradict this Court's implementing statutes.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Government's motion to coordinate discovery and motion for the development of a litigation plan in the SNF cases be denied.

Dated: September 8, 2008

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiff
Power Authority of the State of New York

OF COUNSEL:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)