# In the United States Court of Federal Claims

No. 00-703 C
(Filed: July 5, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **POWER AUTHORITY OF** | \* |
| **THE STATE OF NEW YORK,** | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| **THE UNITED STATES,** | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DAMICH,** Judge.

## OPINION

In this spent nuclear fuel ("SNF") case, Plaintiff ("NYPA") has moved for partial summary judgment "regarding Defendant's one-time fee offset argument." Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's One-Time Fee Offset Argument ("Pl.'s Mot.") at 1.

Under its contract with the Government for the Government's acceptance and storage of its SNF,[1] Plaintiff still owes a one-time fee, payable with interest, but the fee is not yet due. The Government is in partial breach of the contract because it has not yet begun acceptance of SNF.[2] In this motion, Plaintiff seeks a determination that the Government may not offset any damages NYPA may receive (in the underlying action for partial breach) by the amount of proceeds NYPA may have earned from investing monies set aside for eventual payment of the one-time fee. The Government argues that, if damages are not thus offset, Plaintiff would reap a windfall, placing it in a better position than if the Government had not breached the contract in the first place.

---

[1] *See* Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ["HLW"], 10 C.F.R. §96.11 (1983) ("Standard Contract").

[2] *See Dairyland Power Cooperative v. United States*, 2011 WL 2519519 (Fed. Cir. June 24, 2011) at \*1 for background concerning the Department of Energy's ("DOE's") "breach of its obligation to accept spent nuclear fuel from the nation's nuclear power utilities."

For the reasons set forth below, the Court GRANTS Plaintiff's motion for partial summary judgment on the one-time fee proceeds offset.

## I. BACKGROUND

NYPA is the former owner of two nuclear power plants: the James A. FitzPatrick ("FitzPatrick") and Indian Point 3 ("IP3") nuclear stations in New York State. Pl.'s Mot. at 2. In 1983, per the requirements of the Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425 (codified as 42 U.S.C. §§ 10101-10270), NYPA entered into the Standard Contract with DOE. As the *quid pro quo* for the DOE's performance, NYPA, like the other nuclear utilities, was required to pay two separate fees. *Id.* The first fee is an on-going quarterly fee based on kilowatt hours from nuclear power plants generated and sold on or after April 7, 1983. *Id.* The second fee, at issue here, is a one-time fee based on SNF discharged prior to April 7, 1983. The Standard Contract gave utilities three options for payment of the one-time fee. Option 1 allowed for the payment of the fee prorated evenly over forty quarters, including interest. Option 2 allowed a utility to pay the entire fee plus interest calculated from April 7, 1983, to the date of payment based upon the 13-week Treasury bill rate, at any time "prior to the first delivery," i.e., Government acceptance, of SNF. Option 3 allowed a utility to pay the entire fee, without interest, at any time prior to June 30, 1985, or prior to two years after contract execution, whichever occurred later. *See* Standard Contract, Art. VII.B.2. At the time it entered into the Standard Contract, NYPA chose Option 2. Pl.'s Mot at 4.

In November 2000, NYPA sold the FitzPatrick and IP3 plants, and assigned its Standard Contract, to Entergy Nuclear FitzPatrick, LLC and Entergy Nuclear Indian Point 3, LLC (collectively "Entergy"). Pl.'s Mot. at 4. As stipulated in the sales contract, NYPA remains liable to Entergy for the payment of the one-time fee at the time the Government accepts the first delivery of SNF. *Id.* In the meantime, according to Defendant, NYPA invested the money apportioned for payment of the one-time fee in an investment portfolio within its operational fund. Defendant's Response to Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's One-Time Fee Offset Argument ("Def.'s Resp.") at 3. As a result of this investment, Defendant avers that, for the period of January 1, 2001, through September 30, 2009, NYPA has earned approximately $68.5 million in "spread income" by deferring its one-time fee payment. *Id.* at 4.[3]

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." RCFC 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When considering a summary judgment motion, the court's proper role is not to "weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue

---

[3] The $68.5 million figure derives from an analysis by the Government's accounting expert based on discovery, including corporate depositions, of Plaintiff's use of funds allegedly set aside for the purpose of paying the one-time fee. *See* Defendant's Proposed Findings of Uncontroverted Fact, ¶¶ 10-24. Plaintiff reserves the right to challenge this analysis at trial. Pl.'s Mot. at 5 n.1. The validity of the figure is not necessary to the Court's resolution of this motion.

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit;" a dispute is genuine if the evidence is such that a reasonable trier of fact could find for the nonmoving party. *Id.* at 248. The party moving for summary judgment may prevail by demonstrating the absence of any genuine issues of material fact or by showing the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact. *Id.* at 324. Any inferences that may be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). Similarly, "[i]n cases in which there is doubt as to the existence of a genuine issue of material fact, that doubt must be resolved in favor of the nonmovant." *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984).

### III.   DISCUSSION

The issue of whether the Government may offset the one-time fee itself from an award of damages in an SNF partial breach case was settled in *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008). While the court noted the rule that "'the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach," *id*. at 1280 (quoting *Bluebonnet Savings Bank, F.S.B. v. United States*, 339 F.3d 1341, 1345 (Fed. Cir. 2003)), it held that "the application of that rule does not make the Yankees' one-time payment a condition precedent or offset for an award of damages." *Id*. Because the failure of the DOE to collect the SNF in a timely manner was only a partial breach, "[the utilities'] ongoing contractual obligation has not yet matured under the terms of the contract itself." *Id*. Thus,

> "[The utilities] still have the SNF, the government still has the obligation to pick it up, and plaintiffs still have to pay the one-time fee when it becomes due. The only thing that is different from the contract scenario is that [the utilities] claim to have been forced to absorb unnecessary interim storage costs. If the government reimburses such costs, it hardly puts plaintiffs in a better position."

*Id.* at 1281 (internal citation omitted).

Here, the Government acknowledges that "*Yankee Atomic* addressed when to account for the one-time fee obligation itself." Def.'s Resp. at 7. Its argument is addressed, rather, to the issue of the proceeds *derived from* NYPA's investment of the not-as-yet paid one-time fee. Because, "[i]n the non-breach world, NYPA would have paid the entirety of its one-time fee in or before 2000,"[4] therefore "it could not have amassed a $68.5 million gain from [the fee monies'] continued use." *Id*. at 6. "To properly assess damages in this action, the Court must credit the Government the value of this economic benefit, which was conferred upon NYPA as a result of DOE's delay." *Id*.

---

[4] According to Defendant, the first allocation for the removal of SNF/HLW from the Fitzpatrick plant was in 2000; in 2001 from IP3. Def.'s Resp. at 3.

The Federal Circuit recently addressed this very issue in *Dominion Resources, Inc. v. United States*, 2011 WL 1532145 (Fed. Cir. 2011). In *Dominion Resources*, the issue was the trial court's denial of discovery into whether the plaintiff utility benefitted economically by having use of the one-time fee money that it would otherwise have paid in the non-breach world. *Id.* at *4. The court found the Government's argument unavailing:

> We see no merit whatsoever to the government's argument that Dominion may have benefited from the government's breach. Moreover, the parties agreed ex ante, expressly in the contract that the utility would pay the one-time fee with interest accruing from April of 1983 at the thirteen-week Treasury bill rate. Dominion cannot ask for increased damages should its investment of the one-time fee return less than the thirteen-week rate, and the government cannot ask for a reduction in damages should Dominion's investments return more. For either party, such gains or losses are too remote, too far removed from the breach, and the result of intervening investment risk.

*Id.* at *6 (citations and internal footnote omitted).

This Court finds, therefore, that the decisions of the Federal Circuit in *Yankee Atomic* and *Dominion Resources* lay to rest the issue of whether the Government can offset damages by either the one-time fee itself or any proceeds accrued from investment of the one-time fee. Here, the Government makes almost the exact same argument as it did in *Dominion Resources,* the only difference being that here the Government assigns a specific monetary value to Plaintiff's alleged gains, having already undertaken discovery on the matter. As the Federal Circuit has held, however, such gains are "too remote, too removed from the breach, and the result of intervening investment risk." *Id*.

## IV.   CONCLUSION

There are no genuine issues of material fact, and Plaintiff is entitled to summary judgment regarding the Government's one-time fee offset argument.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge